﻿Citation Nr: AXXXXXXXX
Decision Date: 06/28/19 Archive Date: 06/27/19

DOCKET NO. 181112-860
DATE: June 28, 2019

ORDER

New and relevant evidence has been received to reopen a claim of entitlement to service connection for a back disability, and to that extent only the claim is granted.

Entitlement to service connection for a back disability is denied.

Entitlement to service connection for a left eye disability is denied.

Entitlement to service connection for a bilateral foot disability is denied.

Entitlement to service connection for a left knee disability is denied.

The claim that there was clear and unmistakable error (CUE) in the January 2001 rating decision reducing the rating for alopecia areata to a 0 percent is denied.

Entitlement to a 10 percent rating, but not higher, for pulmonary sarcoidosis from November 21, 2014, to February 5, 2017, is granted.

Entitlement to a 60 percent rating, but not higher, for pulmonary sarcoidosis from February 6, 2017, to November 16, 2017, is granted.

Entitlement to a 60 percent rating, but not higher, for pulmonary sarcoidosis with sleep apnea, is granted.

Entitlement to an initial rating in excess of 70 percent for posttraumatic stress disorder (PTSD) is denied.

REMANDED

Entitlement to an initial rating in excess of 10 percent for erythema nodosum, claimed as skin rashes, is remanded.

Entitlement to an initial rating in excess of 10 percent for seborrhea dermatitis is remanded.

FINDINGS OF FACT

1. A March 1997 RO decision denied service connection for a back disability.

2. New evidence has been received since the March 1997 RO decision that is new and relevant to the issue of entitlement to service connection for a back disability.

3. The preponderance of the evidence is against a finding that any back disability was incurred in service or is due to or the result of service.

4. The preponderance of the evidence is against a finding that the Veteran has a current diagnosis of any left eye disability.

5. The preponderance of the evidence is against a finding that the Veteran has a current diagnosis of any bilateral foot disability.

6. The preponderance of the evidence is against a finding that any left knee disability was incurred in service or is due to or the result of service. 

7. A final rating decision issued in January 2001 reduced the rating for alopecia from 10 percent to 0 percent.

8. The correct facts as they were known at the time of the January 2001 rating decision were before the RO, and the statutory or regulatory provisions extant at that time were correctly applied.

9. The January 2001 rating decision that reduced the rating for alopecia was consistent with, and reasonably supported by, the evidence then of record and the existing legal authority, and does not contain an error which, had it not been made, would have manifestly changed the outcome of the claim.

10. From November 21, 2014, to February 5, 2017, the Veteran’s pulmonary sarcoidosis manifested with FEV-1 of 72 and FEV-1/FVC of 71 percent.

11. From February 6, 2017, to November 16, 2017, the Veteran’s pulmonary sarcoidosis manifested with FEV-1/FVC of 49 percent. 

12. As of November 17, 2017, sarcoidosis with sleep apnea did not have sufficient combined severity to warrant elevation to the next higher rating.

13. For the entire appeal period, the Veteran’s PTSD has been manifested by symptoms which most closely equate to occupational and social impairment with deficiencies in most areas; total social impairment is not shown.

CONCLUSIONS OF LAW

1. New and relevant evidence has been submitted to reopen a claim for service connection for a back disability. 38 U.S.C. §§ 101(35), 5108.

2. A back disability was not incurred in or aggravated by service. 38 U.S.C. §§ 1110, 1131, 1132, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.303.

3. The criteria for service connection for a left eye disability have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.159, 3.303

4. The criteria for service connection for a bilateral foot disability have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.159, 3.303.

5. A left knee disability was not incurred in or aggravated by service. 38 U.S.C. §§ 1110, 1131, 1132, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.303.

6. The January 2001 decision that reduced the rating for alopecia ia final. 38 U.S.C. § 7105 (c); 38 C.F.R. §§ 3.104, 20.303, 20.1103.

7. The January 2001 rating decision that reduced the rating for alopecia was not clearly and unmistakably erroneous. 38 U.S.C. § 5109A; 38 C.F.R. § 3.105.

8. From November 21, 2014, to February 5, 2017, the criteria for a rating of 10 percent, but not higher, for pulmonary sarcoidosis were met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.21, Diagnostic Codes 6600, 6846, 6847.

9. From February 6, 2017, to November 16, 2017, the criteria for a rating of 60 percent, but not greater, for pulmonary sarcoidosis were met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.21, Diagnostic Codes 6600, 6846, 6847.

10. As of November 17, 2017, sarcoidosis with sleep apnea warrants a 60 percent rating, but not higher. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.21, Diagnostic Codes 6600, 6846, 6847.

11. The criteria for an initial rating in excess of 70 percent for PTSD have not been met. 38 U.S.C. §§ 1155, 5107(b); 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.126, 4.130, Diagnostic Code 9411.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program. 

The Veteran served on active duty from December 1976 to December 1996. This matter comes before the Board of Veterans’ Appeals (Board) from a May 2015 and July 2017 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Providence, Rhode Island.

The new and material evidence issue regarding a back disability has been recharacterized to reflect the new evidentiary standard under the AMA. Pub. L. No. 115-55, § 5108, 131 Stat. 1105, 1109. 

The Veteran filed a claim on March 18, 2017. The AOJ did not adjudicate the issue of whether there was clear and unmistakable error in the May 2011 rating decision denying service connection for PTSD included in that October 2918 claim or review request. The Board notes the AOJ addressed the issue in a July 2017 rating decision and the Veteran submitted a notice of disagreement in August 2018. However, the Board cannot adjudicate that issue. The Veteran may resubmit the claim to the AOJ or notify the AOJ that the issue is still pending.

1. Whether new and relevant evidence has been received to reopen a claim for entitlement to service connection for a back disability

The Veteran contends that he submitted new evidence to reopen a claim for service connection for a back disability that is new and relevant and warrants readjudication of the issue.

If new and relevant evidence is presented or secured with respect to a supplemental claim, VA shall readjudicate the claim taking into consideration all of the evidence of record. 38 U.S.C. § 5108. New evidence means existing evidence not previously submitted to agency decisionmakers. Relevant evidence means evidence that tends to prove or disprove a matter in issue. 38 U.S.C. §§ 101(35). 

VA will readjudicate a claim if new and relevant evidenced is presented or secured. AMA, Pub. L. No. 115-55, § 5108, 131 Stat. 1105, 1109. Relevant evidence is evidence that tends to prove or disprove a matter in issue. AMA, Pub. L. No. 115-55, § 101(35), 131 Stat. 1105, 1105.

The questions in this case are whether the Veteran submitted evidence after the prior final denial of the claim for service connection for a back disability, and if so, whether that evidence is new and relevant to the claim.

The Board finds the new and relevant evidence has been receiving after the most recent final rating decision that is relevant to the claim. Additional evidence added includes VA medical records and a VA examination showing a diagnosis of degenerative disc disease, which were added after the March 1997 final rating decision. Those medical records were not already of record and may prove or disprove the current disability element of the claim for service connection for a back disability. Therefore, as new and relevant evidence is of record, readjudication of the claim is warranted.

Service Connection

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303. To establish a service connection for a disability, a Veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004).

A disability may be service connected if the evidence of record shows that the Veteran currently has a disability that was chronic in service or that was chronic as defined by regulation with continuity of symptomatology demonstrated after service. 38 C.F.R. § 3.303(a), (b); Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

Service connection may be established for a disability diagnosed after separation, when all the evidence, including that pertinent to service, establishes that the disability is due to disease or injury that was incurred or aggravated in service. 38 C.F.R. § 3.303(d). 

A Veteran need only demonstrate that there is an approximate balance of positive and negative evidence in order to prevail. Gilbert v. Derwinski, 1 Vet. App. 49 (1990). To deny a claim on its merits, the preponderance of the evidence must be against the claim. Alemany v. Brown, 9 Vet. App. 519 (1996).

2. Entitlement to service connection for a back disability

The Veteran contends a current back disability is the result of carrying a backpack while marching and running for over 20 years in service.

Although the Veteran has a current diagnosis for degenerative disc disease and there are in-service complaints of back pain, the Board finds that the evidence does not show a nexus to service. On VA examination in February 2017, the examiner diagnosed degenerative arthritis. The examiner noted that the Veteran had two in-service back complaints, but did not report any back complaints at separation. Based on the record, the examiner opined the Veteran’s mild degenerative disc disease was more likely than not due to his employment as a mail carrier and the normal aging process. Although the Veteran now had a diagnosis of a back disability, the examiner concluded the Veteran’s back disability was less likely than not related to service.

The Board finds that service connection for a back disability is not warranted. While the record shows current degenerative arthritis, the preponderance of the evidence is against a finding of a nexus between the disability and qualifying active service. Degmetich v. Brown, 104 F.3d 1328 (Fed. Cir. 1997); Rabideau v. Derwinski, 2 Vet. App. 141 (1992). The evidence does not support the contention that December 1996 and March 1996 in-service complaints of back pain ere an early manifestation of or related to the current a back disability as the VA examiner found that was less likely. 

The Board finds that the February 2017 VA examination is the most credible and probative evidence of record. The February 2017 VA examiner explicitly stated a back disability was less likely than not related to the service. The February 2017 VA examiner reviewed the record, including the statements of the Veteran regarding the onset of back symptomology, in coming to that opinion. However, those statements did not provide objective evidence that the Veteran’s back disability was related to back complaints in service. The Board is not free to substitute its own judgment for that of a medical expert. Colvin v. Derwinski, 1 Vet. App. 171 (1991).

The Board acknowledges the statements of the Veteran regarding the onset of a back disability, and finds the Veteran competent to report symptoms, such as pain, as that requires only personal knowledge as it comes to him through his senses. Layno v. Brown, 6 Vet. App. 465 (1994); Kahana v. Shinseki, 24 Vet. App. 428 (2011). However, the issue in this case is outside the realm of common knowledge of a lay person, as an opinion regarding the relationship of a current back disability to service is not obvious merely through observation, and requires medical knowledge. There are many types of back disabilities and etiologies of back disabilities. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). The Board finds the January 2017 VA examination opinion to be the most probative and persuasive evidence of record. The Veteran has not submitted any contrary competent medical evidence suggesting that any current back disability is related to service.

The evidence also does not show that any arthritis of the back manifested within one year following separation from service, or that there was a continuity of symptomatology of arthritis since service that would warrant service connection.

Accordingly, the Board finds that the preponderance of the evidence is against the claim for service connection for a back disability, and the claim must be denied. 38 U.S.C. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

3. Entitlement to service connection for a left eye condition

The Veteran contends a left eye disability is related to service.

After review of the evidence, the Board finds service connection for a left eye disability is not warranted. The Veteran had a retina detachment that was repaired in 2010. A July 2013 medical record showed his vision is good with contact lenses. Although the Veteran reported that he has flare-ups that are treated with eye drops, the evidence does not show a current disability or that any current disability is related to service. 

Without a diagnosis of a current disability, service connection cannot be established for a left eye disability. Congress has specifically limited entitlement to service-connected benefits to cases where there is a current disability. In the absence of proof of a present disability, there can be no valid claim. Brammer v. Derwinski, 3 Vet. App. 223 (1992). 

The presence of a chronic disability at any time during the claim process can justify a grant of service connection, even where the most recent diagnosis is negative. McClain v. Nicholson, 21 Vet. App. 319 (2007). Because there was no actual disability diagnosed at any time since the claim was filed or contemporary to the filing of the claim, and there remains no current evidence of the claimed disability, no valid claim for service connection for a disability related to a left eye disability exists. The Veteran has not submitted any contrary competent medical evidence suggesting that that he has any current left eye disability, or that any current left eye disability is related to service.

As the preponderance of the evidence is against the claim for service connection for a left eye disability, the claim must be denied. 38 U.S.C. § 5107 (b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

4. Entitlement to service connection for a bilateral foot disability

The Veteran contends a bilateral foot disability is the result of wearing boots in service, and marching and running for over 20 years.

The service medical records do not show complaints of foot pain. Post-service medical records show the Veteran had plantar fasciitis in 2013, but it improved.

On VA examination in February 2017, the Veteran reported that his feet hurt two years earlier, and he received a shot in the right foot. On examination, there was no reported pain, flare-up, or functional loss. An x-ray showed no evidence of fractures, dislocations, or arthritis. The examiner diagnosed right heel tendonitis that had resolved, and there was no diagnosis for the left foot. In addition, the Veteran did not report any feet complaints at separation. Based on the record, the examiner concluded the Veteran’s bilateral foot pain was less likely than not related to service.

The Board finds that service connection for a bilateral foot disability is not warranted. Without a diagnosis of a current disability, service connection cannot be established for a bilateral foot disability. Congress has specifically limited entitlement to service-connected benefits to cases where there is a current disability. In the absence of proof of a present disability, there can be no valid claim. Brammer v. Derwinski, 3 Vet. App. 223 (1992). The evidence does not show during the period of the claim that the Veteran had a foot disability or foot pain that resulted in functional loss that could be considered a disability.

The presence of a chronic disability at any time during the claim process can justify a grant of service connection, even where the most recent diagnosis is negative. McClain v. Nicholson, 21 Vet. App. 319 (2007). Because there was no actual disability diagnosed at any time since the claim was filed or contemporary to the filing of the claim, and there remains no current evidence of the claimed disability, no valid claim for service connection for a disability related to a left foot disability exists. The Veteran has not submitted any contrary competent medical evidence suggesting that that she has any current left foot disability, or that any current left foot disability is related to service.

As the preponderance of the evidence is against the claim for service connection for a bilateral foot disability, the claim must be denied. 38 U.S.C. § 5107 (b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

5. Entitlement to service connection for a left knee disability 

The Veteran contends that a left knee disability is the result of marching and running for over 20 years.

Service medical records do not show complaints involving the left knee. Post-service medical records show the complaints for the right knee, but not the left. 

On VA examination in February 2017, the Veteran reported that he hurt his knee in 1986 and that he had not had any problems until recently. The examiner diagnosed left knee tendonitis. Range of motion testing was normal. The examiner noted pain on the examination, but it did not result in functional loss. X-ray testing showed no evidence of fracture, dislocation, or arthritis. The Veteran did not report any knee complaints at separation. The examiner noted the Veteran had not sought care for the left knee, but he had been seen for right knee pain. The examiner opined that the Veteran’s knee pain was more likely due to employment as a mail carrier for 20 years and the aging process. Based on the record, the examiner concluded the Veteran’s left knee disability was less likely than not related to service.

The Board finds that service connection for a left knee is not warranted. While the record shows current degenerative arthritis, the preponderance of the evidence is against a finding of a relationship between a current left knee disability and service. Degmetich v. Brown, 104 F.3d 1328 (Fed. Cir. 1997); Rabideau v. Derwinski, 2 Vet. App. 141 (1992). The evidence does not support the contention that pain from in-service marching was an early manifestation of or related to the current a left knee disability. 

The Board finds that the February 2017 VA examination is the most credible and probative evidence of record. The February 2017 VA examiner explicitly stated a left knee disability was less likely than not related to the service. The February 2017 VA examiner reviewed the record, including the statements of the Veteran regarding the onset of knee symptomology, in coming to that opinion. However, those statements did not provide objective evidence that the Veteran’s left knee disability was related to service. The Board is not free to substitute its own judgment for that of a medical expert. Colvin v. Derwinski, 1 Vet. App. 171 (1991).

The Board acknowledges the statements of the Veteran regarding the onset of a left knee disability, and finds the Veteran competent to report symptoms, such as pain, as that requires only personal knowledge as it comes to him through his senses. Layno v. Brown, 6 Vet. App. 465 (1994); Kahana v. Shinseki, 24 Vet. App. 428 (2011). However, the issue in this case is outside the realm of common knowledge of a lay person, as a nexus is not obvious merely through observation. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). The Board finds the January 2017 VA examination opinion to be the most probative and persuasive evidence of record. The Veteran has not submitted any contrary competent medical evidence suggesting that any current back disability is related to service.

The evidence does not show that left knee arthritis manifested during one year following service separation of that there has been a continuity of symptomatology of left knee arthritis that would warrant service connection.

Accordingly, the Board finds that the preponderance of the evidence is against the claim for service connection for a left knee disability, and the claim must be denied. 38 U.S.C. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

6. Whether there was clear and unmistakable error (CUE) in the January 2001 rating decision reducing the rating for alopecia areata to 0 percent

The Veteran claims CUE in a January 2001 rating decision with regard to a claim for rating reduction for status post alopecia. 

As a threshold matter, the Board finds that the arguments made by the Veteran allege clear and unmistakable error with the requisite specificity. Simmons v. Principi, 17 Vet. App. 104 (2003). The Board will therefore adjudicate the merits of the claim.

Previous determinations that are final and binding will be accepted as correct in the absence of clear and unmistakable error. 38 C.F.R. § 3.105(a). A claim of CUE is a form of collateral attack on an otherwise final rating decision by a VA Regional Office. Disabled Am. Veterans v. Gober, 234 F.3d 682 (Fed. Cir. 2000).

In determining whether a prior determination involves CUE: (1) either the correct facts, as they were known at the time of the decision, were not before the adjudicator (there must be more than simple disagreement on how the facts were weighed or evaluated), or the statutory or regulatory provisions extant at that time were not correctly applied; (2) the error must be “undebatable” and of the sort which, if it had not been made, would have manifestly changed the outcome at the time it was made; and (3) a determination that there was CUE must be based on the record and law that existed at the time of the adjudication in question. Damrel v. Brown, 6 Vet. App. 242 (1994); Russell v. Principi, 3 Vet. App. 310 (1992).

Clear and unmistakable error is a very specific and rare kind of error. Fugo v. Brown, 6 Vet. App. 40 (1993). Clear and unmistakable error is an administrative failure to apply the correct statutory and regulatory provisions to the correct and relevant facts. It is not mere misinterpretation of facts. Oppenheimer v. Derwinski, 1 Vet. App. 370 (1991). CUE consists of errors that are undebatable, so that it can be said that reasonable minds could only conclude that the original decision was fatally flawed at the time it was made. Russell v. Principi, 3 Vet. App. 310 (1992). 

A disagreement with how VA evaluated the facts or weighed the evidence is inadequate to raise the claim of clear and unmistakable error. Luallen v. Brown, 8 Vet. App. 92 (1995). Moreover, a failure on the part of VA to fulfill that statutory duty to assist a veteran with the development of facts pertinent to a claim does not constitute CUE. Caffrey v. Brown, 6 Vet. App. 377 (1994).

In this case, the Board finds that the Veteran’s CUE allegation is not sustainable and, ultimately, constitutes a disagreement as to how the facts were evaluated and the evidence weighed in January 2001.

The Veteran was established service connection for alopecia in a September 1997 rating decision, that assigned a 10 percent rating effective January 1, 1997. The Veteran was scheduled for a routine examination.

A May 2000 VA examination found the Veteran had a diagnosis of eczema and status post alopecia areata. The examiner noted that the Veteran had a flaky and sore scalp at the time and that he was not receiving any treatment.

Following the examination, the Veteran was notified in a June 2000 letter of the proposal to reduce the rating for alopecia to 0 percent. There was no response to that letter.

A January 2001 rating decision stated that, “[t]he evaluation of alopecia areata claimed as hair loss due to undiagnosed illness is decreased 0 percent effective April 1, 2001. This condition is rated analogous to skin disease under VA diagnostic code 7806. A noncompensable evaluation is granted if the record shows slight exfoliation, exudation, or itching on a nonexposed surface or small area.” The evidence reviewed at that time was a May 2000 VA examination. 

To the extent the Veteran is arguing that the correct facts were not before the RO in January 2001, the Board does not find that argument persuasive. For CUE, the correct facts specifically refer to how they were known at the time of the decision. At that point, the Veteran had a VA examination that showed his disability required no treatment. He has not offered any evidence that his disability was more severe or that his disability due to alopecia had not improved. Therefore, it is not clear that the correct facts were not before the RO in January 2001. To the contrary, adjudication officers are presumed to have considered all the evidence. Accordingly, it is not clear and unmistakable that the correct facts, as they were known at the time of the decision, were not before the adjudicators in January 2001. The Veteran could have raised his concern that the rating was incorrect prior to the decision becoming final.

Additionally, the law in effect at the time of the January 2001 rating decision required the Veteran be provided with 60 days’ notice prior to any compensation be reduced. 38 C.F.R. § 3.103(2) (2001). The evidence of record at that time did not undebatably establish that the Veteran did not have the opportunity to submit evidence showing that the reduction should not be taken. In other words, the evidence of record at that time was not clearly and unmistakably in the Veteran’s favor in showing improper notice.

The record does not contain any VA examinations that were considered in the May 2000 rating decision. Assuming the Veteran asserts that he should have been provided a VA examination, deficiencies in the duty to assist, to include providing a VA examination, do not constitute CUE. Further, that the AOJ later established service connection based on new and material evidence received after the May 2000 rating decision became final does not establish CUE in the earlier decision.

Consequently, the Board finds that the correct facts as they were known at the time of the January 2001 rating decision were before the RO, and the statutory or regulatory provisions extant at that time were correctly applied. Therefore, the January 2001 rating decision that reduced the Veteran’s disability rating from 10 percent to noncompensable was consistent with, and reasonably supported by, the evidence then of record and the existing legal authority, and do not contain an error which, had it not been made, would have manifestly changed the outcome of the claim. The Veteran’s allegations of error in the January 2001 rating decision are without merit, and his CUE motion is denied.

Increased Ratings

Disability ratings are determined by applying the criteria set forth in VA’s Schedule for Rating Disabilities, which is based on the average impairment of earning capacity resulting from disability. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. Separate diagnostic codes identify the various disabilities. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability more closely approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. 

Where the evidence contains factual findings that demonstrate distinct time periods in which the service-connected disability exhibited diverse symptoms meeting the criteria for different ratings during the course of the appeal, the assignment of different ratings for the distinct time periods would be necessary. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). 

The Board considers all information and lay and medical evidence of record. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Board resolves reasonable doubt in favor of the claimant. 38 U.S.C. § 5107(b). 

7. Entitlement to a compensable rating for pulmonary sarcoidosis from November 21, 2014, to November 17, 2017

The Veteran’s pulmonary sarcoidosis was rated as 0 percent under Diagnostic Code 6846. The Board notes that the Veteran’s pulmonary sarcoidosis was combined with obstructive sleep apnea with a combine 50 percent rating in a June 2018 rating decision, effective November 17, 2017, because ratings under Diagnostic Code 6846 for sarcoidosis and under Diagnostic Code 6847 for sleep apnea cannot be combined. A single rating will be assigned under the Diagnostic Code that reflects the predominant disability, with elevation to the next higher rating where the severity of the overall disability warrants elevation. 38 C.F.R. §4.96(a).

Under Diagnostic Code 6846, sarcoidosis is rated under either the rating criteria of Diagnostic Code 6846, the active disease or residuals of chronic bronchitis as set forth in Diagnostic Code 6600, or as extra-pulmonary involvement under the specific body system involved. 38 C.F.R. § 4.97, Diagnostic Code 6846.

Under the specific criteria of Diagnostic Code 6846, a 0 percent rating will be assigned when the evidence of record shows sarcoidosis with chronic hilar adenopathy or stable lung infiltrates without symptoms or physiologic impairment. A 30 percent rating will be assigned upon a showing of sarcoidosis with pulmonary involvement with persistent symptoms requiring chronic low dose (maintenance) or intermittent corticosteroids. A 60 percent rating will be assigned when the evidence of record shows sarcoidosis with pulmonary involvement requiring systemic high dose (therapeutic) corticosteroids for control. Lastly, a 100 percent rating will be assigned when the evidence of record shows sarcoidosis with cor pulmonale or cardiac involvement with congestive heart failure, or progressive pulmonary disease with fever, night sweats, and weight loss despite treatment. See 38 C.F.R. § 4.97, Diagnostic Code 6846.

Sarcoidosis may alternatively be rated as chronic bronchitis under Diagnostic Code 6600. Ratings under Diagnostic Code 6600 fall within service-connected disabilities related to the Trachea and Bronchi and utilize different Pulmonary Function Tests in evaluating disabilities. 38 C.F.R. § 4.97. Those tests include Forced Expiratory Volume in one second (FEV-1), Forced Vital Capacity (FEV-1/FVC) and Diffusion Capacity of the Lung for Carbon Monoxide by the Single Breath Method (DLCO (SB)). 

Under Diagnostic Code 6600, a 10 percent rating is assigned for an FEV-1 of 71 to 80 percent predicted, or; the ratio of Forced Expiratory Volume in one second to Forced Vital Capacity (FEV-1/FVC) of 71 to 80 percent, or; Diffusion Capacity of the Lung for Carbon Monoxide by the Single Breath Method (DLCO (SB)) of 66 to 80 percent predicted. A 30 percent rating is assigned for an FEV-1 of 56 to 70 percent predicted, or; FEV-1/FVC of 56 to 70 percent, or; DLCO (SB) 56 to 65 percent predicted. A 60 percent rating is assigned for an FEV-1 of 40 to 55 percent predicted, or; FEV-1/FVC of 40 to 55 percent, or; DLCO (SB) of 40 to 55 percent predicted, or; maximum oxygen consumption of 15 to 20 ml/kg/min (with cardiorespiratory limit). A 100 percent rating is assigned for an FEV-1 less than 40 percent of predicted value; or FEV-1/FVC less than 40 percent, or; DLCO (SB) less than 40 percent predicted, or; maximum exercise capacity less than 15 ml/kg/min oxygen consumption (with cardiac or respiratory limitation), or; cor pulmonale (right heart failure), or; right ventricular hypertrophy, or; pulmonary hypertension (shown by Echo or cardiac catheterization), or; episode(s) of acute respiratory failure, or the requirement for outpatient oxygen therapy. 38 C.F.R. § 4.97, Diagnostic Code 6600.

In November 2014, pulmonary function testing showed the Veteran had a FEV-1 72 and FEV-1/FVC of 71 percent. 

In May 2016, the Veteran had stable pulmonary symptoms, and he denied progressive dyspnea, cough, and chest pain.

On VA examination in February 2017, the Veteran reported that he was not receiving any current treatment and his disability was stable. The Veteran did not need any corticosteroids. PFT testing showed that pre-bronchodilator the Veteran had a FEV-1 of 54 percent predicted; FVC of 65 percent predicated; FEV-1/FVC of 65 percent; and DLCO was 80 percent predicted. Post-bronchodilator the Veteran had a FEV-1 of 56 percent predicted; FVC of 88 percent predicated; FEV-1/FVC of 49 percent. The examiner opined that pulmonary function test results did not accurately represented the Veteran’s current pulmonary function, and that the FVC was the most accurate test result. The examiner concluded the Veteran’s sarcoidosis was asymptomatic and that the Veteran’s nonservice connected asthma was predominantly responsible for the pulmonary function limitations. The examiner noted there was no physiological impairment but there was chronic hilar adenopathy.

On review of the record, the Board finds a 10 percent rating is warranted from November 21, 2014, to February 5, 2017. The evidence shows the Veteran had a FEV-1 of 72 and FEV-1/FVC of 71 percent. A higher rating is not warranted because the evidence does not indicate a FEV-1 of 56 to 70 percent predicted, or; FEV-1/FVC of 56 to 70 percent, or; DLCO (SB) 56 to 65 percent predicted or persistent symptoms requiring chronic low dose (maintenance) or intermittent corticosteroids. Therefore, the Veteran is not entitled to a rating in excess of 10 percent for sarcoidosis from November 21, 2014, to February 5, 2017.

From February 6, 2017, to November 16, 2017, the Board finds a 60 percent rating is warranted. As the evidence shows a FEV-1/FVC of 49 percent, the Veteran met the criteria for a 60 percent rating. The Veteran is not entitled to a higher rating because the evidence does not contain a FEV-1 less than 40 percent of predicted value; or FEV-1/FVC less than 40 percent, or; DLCO (SB) less than 40 percent predicted, or; maximum exercise capacity less than 15 ml/kg/min oxygen consumption (with cardiac or respiratory limitation), or; cor pulmonale (right heart failure), or; right ventricular hypertrophy, or; pulmonary hypertension (shown by Echo or cardiac catheterization), or; episode(s) of acute respiratory failure, or the requirement for outpatient oxygen therapy. Therefore, the Veteran is not entitled to a rating in excess of 60 percent for sarcoidosis from February 6, 2017, to November 16, 2017.

For the reasons discussed above, the Board finds that the evidence supports the assignment of a 10 percent rating as of November 21, 2014, and a 60 percent rating as of February 6, 2017, and prior to November 17, 2017. The Board also finds that the preponderance of the evidence is against the Veteran’s claim for a rating in excess of 10 percent for pulmonary sarcoidosis from November 21, 2014 to February 5, 2017, and in excess from February 6, 2017 to November 16, 2017. 

As of November 17, 2017, the Veteran is also service-connected for sleep apnea. The examiner found the onset of sleep apnea was in 2016. He was treated with a CPAP machine. The examiner found that the Veteran had persistent daytime hypersomnolence, but did not have evidence of chronic respiratory failure with carbon dioxide retention, cor pulmonale, or require a tracheostomy. Those finding would be required to warrant a 100 percent rating for sleep apnea. A 50 percent rating is warranted for sleep apnea that requires the use of a CPAP machine. 38 C.F.R. § 4.97, Diagnostic Code 6847.

The Board has considered the severity of the sleep apnea and sarcoidosis findings and finds that elevation of the next higher level of sarcoidosis with sleep apnea is not warranted as the overall level of disability caused by the two disabilities in combination does not warrant the next higher rating. There is no higher rating for sleep apnea. A 100 percent rating, representing total disability, due to sarcoidosis requires findings that are not shown. The Board finds the addition of the disability due to sleep apnea is not sufficient in severity to make elevation to the next higher level of a 100 percent rating for sarcoidosis to be warranted. Therefore, the Board finds that a rating in excess of 60 percent for sarcoidosis with sleep apnea is not warranted as of November 17, 2017, as the preponderance of the evidence is against the assignment of a higher rating.

8. Entitlement to an initial rating in excess of 70 percent for posttraumatic stress disorder (PTSD) as of November 21, 2014

The RO has rated the Veteran’s PTSD under the General Rating Formula for Mental Disorders, which assigns ratings based on particular symptoms and the resulting functional impairment. 38 C.F.R § 4.130, Diagnostic Code 9411 (PTSD). The General Rating Formula provides that a 70 percent rating is warranted where there is occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); inability to establish and maintain effective relationships. 38 C.F.R § 4.130, Diagnostic Code 9411 (PTSD).

A 100 percent rating is warranted for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. 38 C.F.R § 4.130, Diagnostic Code 9411 (PTSD).

The psychiatric symptoms listed in the above rating criteria are not exclusive, but are examples of typical symptoms for the listed percentage ratings. Mauerhan v. Principi, 16 Vet. App. 436 (2002). Although the Veteran’s symptomatology is the primary consideration, the Veteran’s level of impairment must be in “most areas” applicable to the relevant percentage rating criteria. Vazquez-Claudio v. Shinseki, 713 F.3d 112 (Fed. Cir. 2013).

In December 2014, the Veteran presented with symptoms of depression, anxiety, and PTSD that manifested with sleep problems, slight paranoia, anhedonia, decreased appetite, low energy, weight loss, problems concentrating, and suicidal ideation.

At a VA examination in January 2016, the Veteran reported depressed mood, anhedonia, difficulty concentrating, memory problems, insomnia, nightmares, flashbacks, exaggerated startle response, ans suspiciousness. The examiner diagnosed a major depressive disorder and an unspecified anxiety disorder. PTSD was not diagnosed. The examiner found the Veteran’s psychiatric disorders manifested with depressed mood, anxiety, suspiciousness, mild memory loss, flattened affect, disturbances of motivation and mood, and difficulty in establishing and maintaining effective work and social relationships.

In August 2016, the Veteran denied suicidal attempts, but he admitted that he had random thoughts of hurting himself, which most recently occurred a few days prior to the assessment.

At a VA examination in January 2017, the Veteran reported difficulty falling asleep, frequently waking, nightmares, irritability, anger, social isolation, low interest in sex, fatigue, and he hears knocking at times. The Veteran stated that he had suicidal thoughts daily but told the examiner that he would not hurt himself. The examiner diagnosed PTSD with depression and a major depressive disorder. Although the examiner noted that the Veteran only had one psychiatric disorder, the examiner explained that both disorders caused occupational and social impairment, and thus differentiation would be speculative. The Veteran’s PTSD manifested with depressed mood, anxiety, chronic sleep impairment, mild memory loss, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, difficulty in adapting to stressful circumstances, an inability to establish and maintain effective relationships, and suicidal ideation. On examination, the Veteran was cooperative and tearful as he spoke. The examiner concluded the Veteran’s PTSD caused occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation. 

At a VA examination in April 2018, the Veteran reported persistent anxiety, fatigue, insomnia, nightmares, emotional reaction to trauma trigger, avoidance of crowds and traffic, hypervigilance, irritability, and a lack of concentration. He had a good relationship with his wife and three children, and he mainly interacted with his family. The Veteran’s PTSD manifested with depressed mood, anxiety, chronic sleep impairment, mild memory loss, disturbances of motivation and mood, difficulty in adapting to stressful circumstances. On examination, the Veteran’s mood was depressed and slightly anxious. The examiner concluded the Veteran’s PTSD caused occupational and social impairment with occasion decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation. 

On review of the record, the Board finds that the disability picture presented by the Veteran’s PTSD does not warrant a rating higher than 70 percent. The record shows that the Veteran’s PTSD most nearly approximates occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood. 

The symptoms and overall impairment do not indicate the total occupational and social impairment required for a 100 percent rating. Although the Veteran has admitted to suicidal ideations, the preponderance of the evidence weighs against a finding that the Veteran has been in persistent danger of hurting himself or others, as he has denied any intent to harm himself. The Veteran maintained social relationships as documented in the VA examinations and treatment records. The Board has carefully considered the overall impact of the disability throughout the appeal period on the Veteran’s functioning. The Board finds that it has not been productive of total social and occupational impairment at any period under appeal. Neither the symptoms nor overall impairment caused by the Veteran’s service-connected PTSD more nearly approximate total occupational and social impairment. Specifically, the Board notes that the relationships with a spouse and children are strong evidence against a finding of total social impairment.

The Board has carefully considered the level of impairment contemplated by the various levels delineated in the rating schedule and found that the evidence indicates that the overall level of disability most nearly approximates that already assigned. In making this determination, the Board has reviewed all the evidence of record, both medical and lay evidence, regarding the level of severity of the Veteran’s PTSD. There is no period during which the preponderance of the evidence showed that a higher rating was warranted, or that a staged rating was warranted.

Accordingly, the Board finds that the criteria for a rating in excess of 70 percent for PTSD are not met. Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 U.S.C. § 5107; 38 C.F.R. § 3.102.

REASONS FOR REMAND

1. Entitlement to an initial rating in excess of 10 percent for erythema nodosum, claimed as skin rashes, is remanded.

2. Entitlement to an initial rating in excess of 10 percent for seborrhea dermatitis is remanded.

The Veteran underwent skin examinations in February 2015, January 2016, February 2017, and April 2018. In the April 2018 examination report, the examiner did not address the appearance and location of seborrhea dermatitis. The Board finds the April 2018 examination incomplete. After review of the report, and in order to give the Veteran all due consideration, the Veteran should be provided an opportunity to report for another VA examination to ascertain the current severity of the skin disabilities. 

The matters are REMANDED for the following action:

1. Obtain all pertinent VA medical records, not yet associated with the claims file, and associate them with the claims file.

2. Then, schedule the Veteran for a skin examination to determine the current severity of erythema nodosum and seborrhea dermatitis. The examiner must review the claims file and should note that review in the report. The examiner should provide findings regarding all related symptoms and describe the severity of these symptoms. The examiner should state the percentage of the entire body and percentage of exposed areas affected by the skin disability. The examiner should state whether systemic therapy of light therapy is required, and if so, should state the duration of system or light therapy in a 12-month period. The examiner should discuss the therapy used and should opine as to whether that therapy is nor more than topical. The examiner should state whether the skin disabilities result in any scarring, and if so should describe the location and characteristics of any scarring. The examiner should state whether the skin disabilities result in any disfigurement of the head, face, or neck, and if so, should describe the signs of disfigurement shown. A complete rationale for all opinions should be provided in the examination report. 

 

Harvey P. Roberts

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD C. Kass, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.